Good afternoon. The Loyal Appellate Court First District Court is now in session. The Sixth Division. The Honorable Justice Mary Mikva presiding. Case number 1-9-1-3-7-6. People versus Walter Hill. Good afternoon, counsel. Before we start, I just want to first of all thank the lawyers that are participating in the pro bono criminal defense program. It's an extremely large gift from you to the system, and we appreciate the hard work that goes into this. So thank you very much. And also, before we start, the counsels are going to argue this case on each side, starting with the appellant. Please tell us your name and who you're going to represent. Excuse me, one moment. This is the Jericho Hines case. No, this is Hall. This is Hall, is it not? Hill. Hill. Hill. This is Walter Hill. Hill. Excuse me. Thank you. Excuse me. Andrew Murphy for Walter Hill from TAPS. Sutinius and Hollister with Tim Eaton. Thank you, counsel. And Ritha Stotts from the state's attorney's office for the people. Okay. Mr. Murphy and Ms. Stotts, you each will have 20 minutes to argue. Mr. Murphy, would you like to reserve any of that for rebuttal? Yes, Your Honor. Could I reserve five minutes for rebuttal? Of course. All right. Whenever you're ready, you may proceed. Thank you, Your Honor. Counsel, and may it please the court, my name is Andrew Murphy from the law firm TAPS Sutinius and Hollister. Along with my colleague Tim Eaton, I represent appellant Walter Hill. Your Honors, this is a very significant week in the life of Walter Hill. This Tuesday marked his sixth year in custody for a crime he could not have committed. And today marks the very first time that his lawyers have ever presented any meaningful defense in his behalf in court. This is a very unusual direct appeal, to say the least. Walter's conviction rests entirely on a handful of words contained on two 911 calls that were recorded more than a decade before trial. The state did not present any eyewitness testimony, confessions, or physical evidence that connected Walter to the scene of the crime. The state admits in its appellate brief that the timeline of events presented to the jury was inaccurate. Walter's trial counsel admitted in a post-trial brief that they were ineffective in failing to call two alibi witnesses. And the record on appeal contains numerous pieces of exculpatory evidence that were never presented to the jury due to trial counsel's ineffectiveness. Your Honors, this week is significant in another way, too. The tragic events out of Minnesota have served as a stark reminder of why an African American man might hesitate to prolong a traffic stop any longer than necessary. And that leads me to the first issue I'd like to discuss, which is the trial court's erroneous admission of evidence of You just muted yourself. Mr. Murphy, I think you're mute. We'll give you a minute and we don't count this time against you, I promise. Can you hear me, Your Honor? Yes, you're perfect. I'm sorry, we were trying to set up the phone system. I apologize, Your Honor. No problem. We're all learning technology in a way that we never thought we were going to need to. I can't hear them, that's the problem. Take a couple minutes. You can't hear us? You cannot hear me? He can't hear me. Well, I will say to everyone else, let's give him a couple minutes to get back with us. Don't worry, don't worry, you're fine. Oh, he's unmuted, so is he picking up? I got a signal that I was on mute, but then I can't hear them. And I was getting feedback from the two different... Okay, so... Can we just do it through here? Can you see if they're live now or not? They are, and they can hear me, I just can't hear them. I apologize, Your Honors, can you hear me? We can hear you just fine. Can you hear us? Now I can hear you. I'm so sorry about that. Not a problem at all. Start wherever you like, and we will not count any of that time against you, so go ahead. Thank you. Your Honors, this week reminds us that an African American man who has stopped in an unfamiliar state might have reason not to want to prolong a traffic stop. The state erroneously admitted evidence about a traffic stop that had nothing to do with the events of this case. The traffic stop in question occurred two months before the murder, and its only purpose in being admitted to trial was to allow the state to insinuate, without any evidence, that Walter was engaged in some kind of unspecified illegal activity. In its brief, the state takes the surprising position that not only was admission of the traffic stop harmless, but that the jury should have made exactly that sort of inference, that because Walter exercised his constitutional right to refuse consent to a search in which there was no probable cause or reasonable suspicion to search the vehicle, that somehow that shows that he was involved in drug dealing or some other kind of illegal activity. The Supreme Court decided 45 years ago in the Doyle case that it violates due process to use a defendant's invocation of his criminal rights against them at trial. And we cite cases in our brief that extend that reasoning to instances in which there's been a search or refusal to consent to a search. Your Honors, the admission of this evidence was also highly prejudicial. Walter is by all accounts, and you can look at the pre-sentence report in this case, a law-abiding family man. It makes no sense for him to round up a posse of five other people and murder his best friend in this very professional fashion. It's utterly inexplicable as the trial judge himself said at sentencing. So for the state's theory of the case to make any sense, they had to insinuate that somehow Walter Hill is a drug dealer. And they had every opportunity to put in that evidence. Defense counsel filed a motion in limine to exclude any reference to drug dealing. That motion was overruled. And for that reason, the judge told the veneer in this case that they would likely hear some evidence about drug dealing, but no such evidence ever materialized because it doesn't exist. And as further confirmation of that, look at the pre-sentence report in this case. There isn't a mention of any drug dealing or any sort of criminal enterprise between Mr. Hill and the victim in this case. Turning to another problem with the state's theory, the state's case relies entirely on these 9-1-1 calls that are critical to understanding the case. And I would submit that it's very important for your honors to listen to the calls. I tried to excerpt the relevant portions in my brief, and the transcript is in the appendix, but they really don't do justice to the nature of the calls. And I'll say that there are at least four different layers of problems with the state's heavy reliance on these calls. And I'll pack those as best as I can in the time that I have, but I want to put them on the table first. The first one is that the calls are not the functional equivalent of eyewitness testimony at trial. It's just very different. And the state did not cite a single case like this in which 9-1-1 calls were found sufficient to prove guilt beyond a reasonable doubt without any sort of corroborating evidence. Second, I would say that even if you put that aside and ignore that we're not dealing with live trial testimony here, the content of the calls is very vague with respect to Walter. At no point do they explain how Walter was involved, what he did in furtherance of this criminal conspiracy that the state has to prove that he was involved in. There is no detail. Third, I would say that there are many reasons to doubt the accuracy of the identification on the calls, and I'll get into some of those in a moment. And fourth, and critically too, I would say that the jury was never in a position to properly weigh how much weight to give to the 9-1-1 calls because they didn't have all the evidence. And what evidence was admitted was misrepresented again and again at trial. Turning to the sort of... Excuse me. Yes, Your Honor. Wasn't his voice identified by his widow, Nicole, in these 9-1-1 recordings? Yes, Your Honor. And in those recordings, didn't he describe his kidnapping and shooting and on two occasions identified Walter Hill as one of the assailants? Yes, Your Honor. All that is true. A few points. I would say, one, the identification of Walter as, excuse me, as Tracy's voice came 10 years after the recordings were made. But assuming it was the victim on the calls, you know, it's one bizarre thing that the state has never explained is why Tracy's assailants having kidnapped him and having found him in possession of a phone and making 9-1-1 calls would then allow him to continue making calls to 9-1-1. It's not until the assailants in this case had found the victim making phone calls that he ever said anything incriminating about my client. And I would also say that when you listen to the calls, it is clear that the victim is confused. By the time he has made those statements about my client, he has been shot three times. He has suffered multiple skull fractures. He's focused on asking the 9-1-1 operator to trace the call or to find out where they are. And certain aspects of what the caller reported were substantiated. He was found in the trunk of a car. But many aspects of it were not. The caller described six individuals in two cars. The state never found the other car. The state does not know, doesn't have a theory for who the other five people are. Initially, the state's theory was that one of those people was David Johnson. He was acquitted in this case based on almost identical evidence. It's unclear whether the state still thinks that he was one of the assailants. Your Honors, there are other reasons to doubt the identification. I want to stop you on the four calls. The first two calls he made, there was no identification of who had kidnapped him. Is that correct? And then only on the last two does he identify Mr. That's right, Your Honor. He says he refers to the kidnappers as they. And I believe on the second call, he says he knows who they are, but he doesn't offer who that is. And it's really only on the third call after he's been caught with the phone and after he's been shot that he says that he mentions Walter Hill. Why does that cast doubt as to Walter Hill being a perpetrator? Your Honors, you've got a very high tense emotional situation going on him in the trunk. And now you wish us to quibble that he didn't include in conversation one, which we included in conversation for while he's obviously near death and die. Your Honor, I would say that, Your Honor, I would say that I think it would be a close case case if we were dealing only with this with the sufficiency of the evidence. You know, we haven't found a case like this where there's no substantiation for what is said on the calls. But but what's really important is the jury wasn't allowed to properly weigh what what weight to give that testimony or those statements. The jury did not know that the timeline that the state had depicted was inaccurate. And on appeal, the state has said, well, that doesn't matter because the murder could have happened as late as eight or nine a.m. But that theory was never advanced to trial. This was a very close case. The jury initially deadlocked and they asked for a definition of reasonable doubt. And if they had known that that we were talking about a matter of minutes in which it's even theoretically possible for Walter to have been with the victim, that that would have had to have changed the way that the jury was evaluating that test, those statements. You know, the state would like to, you know, sort of put the the evidence in one bucket and the insufficiency of arguments in the other bucket. But you have to consider everything in context on kind of unusually in this appeal. We have numerous exhibits, about 50 exhibits that weren't admitted to trial, but are included in the record on appeal. And as I said, many of the exhibits that were admitted were were misrepresented. You know, the detective who had been investigating this case for 10 years said the murder happened at 105. That's false. The murder could not have the final shots could not have been fired until after 117. Meanwhile, the police found Walter at home sometime before 146. And we don't know when exactly because the state multiple witnesses for the state set a trial that the that the police arrived at Walter's house at two o'clock. Well, that's also false because they arrived sooner than that. And furthermore, we don't actually know the true timeline. What I what I'm explaining now and what I explained in the brief are the maximum and minimums that we're dealing with, but on every end of that spectrum. We don't know Whether it's possible for Walter to have made that drive from where the victim was was found back home before the police arrived on one end of the spectrum. We don't know when the fatal shots were fired. The state admits they could have been fired as late as eight o'clock the next morning. On the other end, as I said, we don't know when the police arrived and we don't know how much time it would have taken someone to make that drive. You know the the state never argued that it could prove Walter pull the trigger and justifiably so. But the presentation to the jury made abundantly clear that the state's theory was that Walter was one of the people in those two cars. That that had the victim when when he was making the calls. And if that's not true. I don't know how you can credit the the statements on the calls for purposes of Walters involvement in the crime, but not any of the details that the caller offered You know, either the statements are credible or not. And we submit that in light of all the evidence. They're not credible. But putting those putting aside whether the jury would have been entitled to give the way they did to the statements on the calls. You know, you have to consider the the the ineffectiveness here counsel failing to point out all of these holes in the state's case. And sometimes repeating the state's misrepresentations of the evidence, such as when the state says that the Police arrived at two o'clock and counsel repeats that, you know, in some contexts, you know, failing to appreciate the difference in minutes might be not so big of a deal. But in this case, it's it, you know, it's a it's the difference is a man spending the rest of his life in prison. Potentially And related to that point. Council this case admit that they were ineffective and failing to call to alibi witnesses. You know, the state points out correctly that we don't have an affidavit from those witnesses, but we have councils representation about how they would have testified We know from a police report that those alibi witnesses were at home with Walter when the police arrived. So we have a reason to to believe that they would know Walter was home and and the police report also notes that they related the same information that Walter had So we have every reason to believe they would have testified favorably no reason to think that they would have said anything incriminating against Walter, yet they weren't called And counsel. Conceded in the post trial motion that they were ineffectives and failing to call his alibi witnesses doesn't submit a declaration from them doesn't even mention the ineffectiveness at the post trial hearing The post trial hearing transcript is about three or four pages long. No mention of ineffectiveness that suggests to me that counsel. Was not vigorously pursuing this ineffectiveness claim perhaps They believed reasonably that they had a conflict of interest and and didn't think that they want that they could effectively argue their own ineffectiveness. Maybe ask you a question about that on what the elders would have testified to on on some of the things you raise an ineffectiveness, like what the elders would have testified to or what Tracy's own Phone calls to other people, either on his burner phone or his regular phone would have shown some of that we just don't know right at this point, we don't have a record on it. Right. I mean, isn't that correct. Yes, Your Honor. That's true. And there are instances in which, you know, I I accept the state's point that sometimes, you know, you don't want to ask a witness something if you don't know the answer. But on the other hand, Go ahead. I mean, sometimes we we we say that those claims are better reserved for a post conviction, where the record can be filled in so that we as a court can decide whether there's prejudice Your Honor, there are there are things like that in this record. And I would say one one example that would be pursued on On collateral review certainly is is who is this person whose voice you hear on the calls that's apparently not Walter and apparently not David Johnson, because we there are hours and hours of their prison recorded conversations in this record. You know, some of those things we would want to pursue on collateral review. Other things are very obvious. It is the minutes in this case between the time the murder occurred and when the police arrived at Walter's house are absolutely critical and counsel failed to appreciate that significance that alone or it's reversal. And there are lots of other Mistakes that we can point to. And some of them, you know, counsel may have had a good reason for I submit that when you look at the record in its entirety. It's obvious that that trial counsel just didn't know this record. Why wouldn't you ask Why wouldn't you ask Troy Jagadowski, who is, you know, a critical witness why he called the victim five times within An hour of the last 911 call I'm going to even giving you a new start time you've used 15 minutes. So if you do want to reserve Some time. I'm going to honor. I will Stop you unless there are questions from the panel. All right, counsel for the state. May it please the court and counsel read the stats from the state's attorney's office for the people. I want to start by responding to a few of the things different Council just just said, as for why counsel wouldn't ask Troy Jagadowski why he called defendant five times early in the morning. The state put this statement on record at the pre trial hearing, which is that Troy told the police and state that he bought $20 of marijuana from defendant every week. That's a page 225 of the report of proceedings. That would have been a terrible question to ask. It would have just hurt the defendant. If Troy said, yes, I was calling defendant to buy some marijuana. That's just one example. I counsel also mentioned that the co defendant, David Johnson was acquitted. And that's true. And I just want to get this out of the way. We do not have the full record of the David Johnson trial because the trials were severed. We have parts of it, but not all And of course the 911 calls were not as strong with respect to David Johnson, because there's no last name. So we can't take anything from the fact that the co defendant was acquitted. Counsel's focusing heavily on this idea of a timeline, but I think this is a distraction. It was always clear that we didn't know exactly when Tracy was killed. We had a window. He was kidnapped sometime before 1am. He died sometime before 9am when his body was found, but we don't know exactly when he's kidnapped. We don't know exactly when he shot. We don't know exactly when he dies. It's also clear the defendant didn't need to be there when Tracy died. This was this. I think counsel mentioned conspiracy. There wasn't a conspiracy charge here. There was felony murder and accountability. And so that means defendant doesn't have to be there for the entire kidnapping. If he's there at the start of the kidnapping and he doesn't withdraw, which there's no evidence and someone else kills Tracy during the course of the kidnapping, that's felony murder. And so the 911 calls suggest that Tracy that defendant was one of the shooters. But even if he just participated in the beginning of the kidnapping and didn't withdraw. That's all we need. And so we don't know when the kidnapping started. So this idea of a timeline, it's not going to exculpate defendant. Counsel also mentioned that the jury was deadlocked. That's not true. There is no evidence of a deadlock with respect to a verdict. There was one note from the jury. So this was a three day trial, 22 witnesses. The jury was only out for four hours. So it wasn't an inordinately long time. There was a jury note that the trial court read into the record about a stalemate. But the stalemate was about the meaning of reasonable doubt. So they weren't necessarily gridlocked or deadlocked on the verdict itself. They were at a stalemate about the meaning of a particular jury instruction. So that's all we have. I don't think we have a deadlock jury in any respect. Regarding the sufficiency of the evidence, defendant is complaining that this evidence in these 911 calls somehow was not good enough, wasn't the equivalent of live testimony. But that would be an argument that the evidence shouldn't have been admitted. And it absolutely was properly admitted as substantive evidence for the truth of the matters that Tracy asserted in those calls. And that was correct. And that's why counsel rightly did not challenge that on appeal. Multiple hearsay exceptions applied and it wasn't testimonial under Davis against Washington. So there was no problem with admitting this evidence. The sufficiency question is has to view the light of the evidence. Counsel is is is the defense right that you are unaware of any case in which I mean there are a lot of cases that say the testimony of a single witness is sufficient to sustain a conviction. But are you aware of any case where that single witness is someone who is not subject to cross examination for legitimate reasons? Because I agree with you, this was admissible. But are you aware of any case that's similar? I haven't found one exactly like this. But again, defendants complaining about the quality of the evidence, the reliability, those are admissibility questions. And he was he lost on those questions, rightly so. There's, you know, there are multiple hearsay exceptions here, dying declaration, excited utterance, and there's no confrontation clause problem because what the Supreme Court held in Davis against Washington, is that a person who's making statements to a 911 operator to meet an ongoing emergency, those are not testimonial. So they're outside the scope of the confrontation clause. So there's, there's no problem with the quality of this evidence. And I would submit, this is extremely compelling. If you listen to the calls and read the transcripts, there, it couldn't have been better if this was a live witness. This victim is terrified, he is panicked, he is doing everything he can to accurately report what is happening. So the 911 operator can save his life. So, I mean, defendants faulting us for relying heavily on this, but this really was the whole ballgame. There was really no way the jury wasn't going to convict after hearing these calls, they were extremely compelling evidence. I know the defendant has, has referenced these vigorous factors, and there was no lineup here. So they really don't apply because the victim is identifying someone he knows well. This is his longtime friend who he's known for years. But if the court wants to consider those in looking at this reliability of these 911 calls, they do weigh heavily in favor of the state. You know, he didn't need an opportunity to view or provide a description of defendant because he identified him by his full name and city of residence, Walter Hill of Dalton, Illinois. His degree of attention was high. He was trying to save his own life in an in-progress kidnapping and provide as much detail as he could to the 911 operator. His certainty was also high. He named defendant repeatedly by his full name. And then the time between the crime and identification was nonexistent. The victim was identifying defendant as one of his assailants to the 911 operator while the crime was in progress. So this is actually very high quality evidence. And of course, you know, the only reason the victim isn't there is, you know, the forfeiture by wrongdoing argument, which we made. So we can't really, you know, this is a case where you can't complain about the witness being unavailable for cross-examination. So the calls are detailed and very specific. Just one example, he gives his full name, the defendant's name, where he lives, how many people are involved. He says six. He describes both of the cars, how many times he's been shot. And he says the defendant is both one of the kidnappers and one of the shooters. And here's just a little excerpt of the calls, which are very detailed. But one excerpt is the 911 operator asked, who shot you? Do you know these people? Yes. Question, who are they? Walter Hill of Doulton and David, his cousin. They got me. I'm dead. So that alone was sufficient evidence. We also had some motive evidence and some evidence of things defendant did, you know, lies he told to the police and defendants are Tracy's wife, Nicole. He had a bunch of different stories there. And so all that evidence viewed together was certainly sufficient. I should mention that this, the motive evidence, you know, at trial and before trial, we framed it as that the defendant and Tracy were involved in drug trafficking. I've reframed it slightly on appeal as an illegal business because we weren't ultimately able to prove that it was drugs that the business was. But. But I think a defendant's arguing that, you know, this evidence didn't exist, it wasn't really drug trafficking. I want the court to know just so it's clear that we weren't making this up and that this was a good faith argument. Malcolm Manuel, who Tracy's wife said, was the person he drove around. He's definitely a drug dealer. He's in federal prison right now for a marijuana conspiracy. So we ultimately weren't able to get that in. We thought it would come in through Tracy's wife and the defendant complained that she wouldn't have sufficient personal knowledge. So it ultimately didn't come in. But it was the same theory. It was an illegal business. And the nature of the business wasn't significant. It's the fact that that's illegal. That's what gives the defendant the motive. He can't go to the police and complain that Tracy stole money from him because the money is with some tied up with some crime he's committing. And that's why he has to take matters into his own hands, recover the money himself and kill Tracy. I want to move to the traffic stop evidence. First, defendant has just made an argument in just in his opening about Doyle. This is a completely new argument. Defendant has never raised any argument that the admission of evidence that he refused to consent to the search when he was stopped in Arkansas violated his constitutional rights. That was not presented to the trial court. It was not raised in his opening brief. So to the extent he's raising a constitutional argument now based on Doyle, it's much too late. It's forfeited. We'd ask the court not to consider it. We haven't had a chance to respond. There's a little bit of confusion about some of our responses to the other aspects of the drug trafficking argument. So I want to talk about that a little bit. One piece of it is that relates to Trooper Rappert's testimony that he was assigned to drug interdiction. That's not clear from defendant's brief. But what the trooper said was he was on drug interdiction at the time of the trial. This was in 2019, 11 years after the stop. He did not say he was doing drug interdiction when he pulled defendant over. This was a background question. The prosecutor asked, you know, what's your current assignment? He says drug interdiction, no objection. And then he says, what were you doing back in 2008 when you pulled over defendant? He says, I was a highway patrolman. So this was never raised in pre-trial motions, never raised at trial, totally forfeited and harmless in any case. The jury didn't care what the trooper was doing at the time of the trial 11 years later. So that's one piece of the traffic stop complaint we can put to the side. The rest of the argument has to do with the trooper's testimony about the stop and the video evidence of the stop. Now, what we've argued is that those claims are partially forfeited because not all the arguments defendants making on appeal were in his post-trial motion. Specifically, he did not argue in the post-trial motion that the evidence that he refused to consent to the search was substantially that the likelihood of unfair prejudice was substantially would substantially outweigh the probative value. So that's the argument that he's focusing on now. And that one's forfeited. We pointed it out in our opening brief that it was not in the post-trial motion and defendant could have come back and reply and argued plain error, but he didn't. And so that's forfeited too. But I would add, even if the court were to look at it, it's meritless. The cases defendants rely on only hold that the state can't use the fact that a defendant refused to consent to a search as evidence of his consciousness of guilt with respect to the charged crime. I'm just going to stop you for a second. So he did object at trial to be any evidence of the traffic stop, correct? That objection was made? I don't know if he re-objected, but it was in the pre-trial motions. In a motion to eliminate. Motion to eliminate, right. And so my question for you is, what was the purpose of putting this evidence in? What was the legitimate purpose of putting this evidence in? What was the legitimate reason for putting it in? I mean, there were different aspects of the prejudice, suggesting drugs or him invoking his rights, and you're saying he forfeited some of those. But my question for you is, why does it get in? It was part of our motive evidence. And as I mentioned, I think we thought… Part of your motive evidence of what? That they had a relationship? What motive? They were involved. What we thought we'd be able to prove more clearly was that they were involved in drug trafficking, and that Tracy stole drug trafficking proceeds from defendant, and he had to kill him because he couldn't go to the police. I'm sorry, how did this show drug trafficking other than through the fact… What was the evidence that this was a drug trafficking trip? Well, that's the thing. We, you know, it's minimally relevant, and we were not able to tie it up that this trip specifically was related to drug trafficking. So it doesn't get us very far. But the question is, you know, was it an abuse of discretion to say that it makes it slightly more likely if a person says, oh, no, you can't search my car. We've got two men traveling across the country. I'm going to stop you, and maybe I'm remembering the record wrong, but I thought you told the trial court it was getting in to show the relationship between the defendant and Tracy. No, that is one of the things the trial court said. And so we didn't specifically… We argued repeatedly that we were going to show as motive that they were drug trafficking together and there was a theft of proceeds. And the judge ruled repeatedly that we could put in that motive evidence. We didn't say specifically, oh, and by the way, this traffic stop is part of our motive evidence, but everyone understood that that's what it was. And defendant, even in one of his motions, argued, don't let this come in. The jury is going to hear about this traffic stop and think I was trafficking drugs. So everyone knew that's what it was for. We weren't able to ultimately tie it up as well as we hoped, but we've got two people traveling across country for no reason. We've got… They lived. They were only 200 miles from where their families lived, right? It's certainly possible. If they were on some sort of pleasure trip, as defendant suggests, you know, why would the defendant, who's Tracy's best friend, why would he abandon him in Arkansas instead of staying to post his bail? Did he have to hurry up and get back on the road and get his car home because he had evidence in it? Maybe, because we know he posted the bail as soon as he got back to Chicago, but he left Tracy there in Arkansas instead of staying to help his best friend, which you would think you might do if you were just on a casual trip. If it was a drug trafficking trip or some other type of illicit business, it would make more sense that he would refuse the search and move on. But I do want to mention, this was a couple lines of testimony. This is getting sort of an outsized focus in this argument, but it was a couple lines, and the people never made any specific arguments based on the traffic stop or based on the refusal to consent to the search. So, you know, it's just a question of, was it an abuse of discretion? No. It maybe made it a little more likely that our motive theory was correct. Even if it was an abuse of discretion, it was harmless. This did not make a difference. The unfair prejudice question asks whether the jury would have used evidence to convict a defendant for the wrong reason. So the question here is, did the jury think, gee, I don't know if he committed this murder, but I think he had something in his car when he was stopped in Arkansas two months earlier, so I'm going to convict him anyway. That doesn't make any sense here. The jury was going to convict this defendant no matter what, based on very powerful evidence in those 911 calls. So if there was an error here, and again, you know, our position is it's forfeited. If there was any error, it was certainly harmless. But doesn't that bolster your argument that the motive for killing him was that he had taken drug money? So isn't that highly prejudicial? Well, it's prejudicial in that it's bad for the defendant, which all of our evidence is prejudicial in that sense. The question is, is it unfairly prejudicial? That's the only way he gets to exclude it. If the jury is going to convict you for the wrong reason, not because you did it, but because they're really mad at you for some unrelated thing you did a couple months earlier, there's no chance of that, partially because that link doesn't make sense, that they would convict him of murder because they thought he had drugs in his car in Arkansas, and partially because of the strength of the 911 calls. This was a foregone conclusion. There's no way a jury hearing those calls would not convict for the right reasons. How do we know that the defendant was present and that the money that was allegedly stolen by the victim didn't belong to someone else and that they were the ones that kidnapped the victim? Well, we know from the calls, and we do need to take the evidence in the light most favorable to the state. So we've got someone who knows the defendant well, identifying him repeatedly. I mean, this idea that Tracy's naming the defendant for no reason because someone else is forcing him to is pure speculation. That's a reasonable hypothesis of innocence kind of theory, but that's not what the court applies in a sufficiency analysis. We view the evidence in the light most favorable to the state. Tracy's telling the truth. He's credible. His evidence is sufficient. He would have no reason to falsely accuse his best friend. And again, he's dying in the trunk of the car. His motivation there is to give the 911 operator truthful information so she can save his life. And again, I know the question mentioned the money, and that goes to motive, and we tried to prove up motive as best we could because juries like to know why crimes occur, but we didn't have to prove motive. All we had to prove was that the defendant was responsible for these crimes. The reason doesn't matter, and the calls alone are enough to show he was responsible. But didn't he have to be present? Not when the defendant died, no. And we even argued, it doesn't matter who pulls the trigger. This was felony murder predicated on kidnapping. So if he was involved in the kidnapping, as long as he didn't withdraw, even if he went home to wait for the police and someone else finished the victim off, which is, we don't really know the timeline here. But if he's involved in the kidnapping, and the victim is killed during the course of the kidnapping, and we know he was, he never made it out of the trunk. There's a pool of blood in the trunk, there's bullet holes in the trunk, there's a shell casing in the trunk. He was killed in the trunk. He never made it out. He was killed in the course of the kidnapping. That's felony murder. And as we said, you know, it doesn't matter who pulled the trigger here. Defendant is on the hook for both of these crimes. You're, you're about out of time, but I would like you to address at least briefly the ineffective assistance argument. If there's anything. Sure, sure. You know, defendants asking the court to speculate about these witnesses, what these uncalled witnesses, the elders would have said. It's clear from anus that the court can't do that. We need affidavits. The fact that counsel put this in the post trial motion and did their best and fell on their sword and said, oh, we were ineffective. It doesn't mean anything. It's not evidence. It's attorney bluster. We need evidence from the elders and we don't have it. And what Enos says is no further analysis of this claim. With respect to the other claims, it's a bit of nitpicking of attorney performance. And you don't look at individual things the attorney could have done different. You look at the performance as a whole, and this performance was good. This attorney felt multiple pretrial motions, trying to exclude evidence, trying to exclude certain arguments. He failed the 911 calls rightly came in. Once that ruling was made, there wasn't much counsel could do, but he tried. He did extensive cross examination of the medical examiner, tried to show that, you know, Tracy couldn't have been shot in the trunk based on the medical evidence. It was a good argument. It certainly wasn't ineffective, even if it was deficient. Again, there's no possible prejudice because of the strength of the evidence. Whatever counsel could have done wouldn't really have made a difference. Defendant needs to show a reasonable probability of acquittal if counsel did something different. And there was just no chance of acquittal given those calls. If I'm out of time, unless the court has questions, I'll ask the court to affirm the judgment. Any further questions? All right, Mr. Murphy. Thank you, Your Honor. Just a few points. One is I'd like to correct a representation that was made earlier. There was a representation that in a pretrial hearing that there was testimony or a representation that Troy Jagadowski had bought drugs from defendant. That's not true. The testimony in the pretrial or the representation in the pretrial hearing was that Troy Jagadowski bought drugs from the victim, Mr. Hughes. You know, the state kind of wants to have it both ways with this traffic stop in a way that I find very problematic. The state wants to say on the one hand, well, it doesn't really matter because there wasn't much testimony about it. And, you know, it was of marginal relevance. But on the other hand, they want to say it was probative to show that Walter was dealing drugs and therefore had a motive. They can't have it both ways. It's abundantly clear what the state wanted the jury to infer, which is that two African-American men driving a BMW across the country together must be up to no good. And to not only say that that's harmless, but to say that it's perfectly fine to hold Walter's exercise of his constitutional rights against him violates decades of Supreme Court precedent. And I haven't heard a convincing argument otherwise. You know, as for these pretrial motions that were mentioned, they were filed by Mr. Weigel's associate and they were referred to as boilerplate by the associate. And some of them were frankly kind of ridiculous, such as a motion in limine to exclude the name of the offense charged. So you can't look to the pretrial performance to judge these very real concerns that happened at trial where Mr. Hill's retained attorney introduced literally no evidence in defense of his client. In closing, I'll leave you with this. Mr. Hill feels that people are supposed to get an education, work, and obey the law. Mr. Hill respects the police. Mr. Hill respects the court system, but he feels juries rely too much on their emotions and not enough on the facts of the case. Those are not my words, your honors. That was what Mr. Hill said to the probation officer who prepared his pre-sentence report in this case. And that is exactly what happened here. The jury relied on its emotions to convict Mr. Hill of a crime he couldn't have committed based on the state's inaccurate and incomplete picture of what transpired that night more than a decade ago. We submit that a reasonable jury couldn't have found him guilty beyond a reasonable doubt based on the evidence of trial where the state introduced no eyewitness testimony or physical evidence connecting Walter to the murder. At a minimum, the case must be remanded so that Mr. Hill can finally receive a fair trial untainted by counsel's ineffectiveness and the other errors we discussed in the briefs. Thank you, your honors. If you have any questions, I would be happy to answer them. Does anyone have any questions? Counsel, did you want to say something? I did. I just wanted to apologize to the panel and to Mr. Murphy. He is correct about the Troy Jagodowski comment. I misread my own handwriting. I'm so sorry. We've all done the same, don't we? Thank you. Thank you for the admission, though. Acknowledgement. Anything further from the panel for Mr. Murphy? Thank you both. Thank you both. We will take this matter under advisement. And again, thank you for your participation in the pro bono program. Thank you.